Charles A. Peckham Rawlins County Attorney 308 Main, Box 46 Atwood, Kansas 67730 Gary E. Rebenstorf Director of Law and City Attorney City Hall, 13th Floor 455 North Main Street Wichita, Kansas 67202
Dear Mr. Peckham and Mr. Rebenstorf:
As Rawlins County Attorney and as Director of Law and City Attorney for the City of Wichita, respectively, you pose three questions in relation to L. 2003, ch. 42, § 2(a),[1] which will be codified as K.S.A. 2003 Supp. 8-2,150(a). This new statute, which is a part of and supplemental to the Kansas Uniform Commercial Drivers' License Act (Act), provides:
 "A driver may not enter into a diversion agreement in lieu of further criminal proceedings that would prevent such driver's conviction for any violation, in any type of motor vehicle, of a state or local traffic control law, except a parking violation, from appearing on the driver's record, whether the driver was convicted for an offense committed in the state where the driver is licensed or another state."
According to testimony of Sheila Walker, Director of Vehicles, this provision, as well as other amendments to the Act, were necessary for the following reason:
 "The U.S. Department of Transportation, Federal Motor Carrier Safety Administration, published its Final Rule on Commercial Driver's License Standards, Requirements and Penalties and the Commercial Driver's License (CDL) Program Improvements and Noncommercial Motor Vehicle Violations on July 31, 2002 (49 C.F.R. Parts 350, 383, 384 and 390).
 "In order for the State Highway Fund to avoid losing $16 to $18 million the first year and $31 to $33 million the second year, Kansas must pass state laws that mirror these federal regulations. House Bill 2220[2] will bring Kansas into compliance with the revised federal rule, which must be implemented by all states to protect highway funds."[3]
Driver vs. Holder of Commercial Driver's License
The Act defines the term "driver" as:
 "Any person who drives, operates or is in physical control of a commercial motor vehicle, in any place open to the general public for purposes of vehicular traffic, or who is required to hold a commercial driver's license."[4]
In light of this definition, Mr. Peckham asks whether a person who merelyholds a commercial driver's license, but who is not required to hold a commercial driver's license, and is not driving, operating or in physical control of a commercial motor vehicle at the time of offense, is precluded from entering a diversion agreement for that offense. This situation could arise if a person formerly engaged as a commercial driver is no longer so engaged but has maintained his commercial driver's license.
We note that while Section 2 of L. 2003, chapter 42 is written in terms of a driver's conviction for a violation in "any type of motor vehicle," that phrase nevertheless modifies the word "driver," which statutorily does not include a person who holds a commercial driver's license but does not otherwise fall within the definition of "driver." In reaching this conclusion we are mindful of the fundamental rule of statutory construction that the intent of the Legislature governs.[5] Legislative intent may best be determined from the plain meaning of the words used in the statute in light of all the experience available to the law-making body.[6]
Nevertheless, we are also mindful that the Legislature may not have expressed itself as it may have wished in attempting to mirror the applicable federal regulations. We note, for example, that49 C.F.R. § 384.225, which requires states to maintain a record of violations, refers to records of "CDL holders," not "drivers" as defined under Kansas law, as well as to "a person required to have a CDL." The Federal Motor Carrier Safety Administration's discussion of comments regarding this federal regulation include:
 "Section 202(f) of the MCSIA [Motor Carrier Safety Improvement Act of 1999] requires the States to maintain a driver history record for CDL drivers of all convictions of State or local motor vehicle traffic control laws while operating any type of motor vehicle [49 U.S.C. § 31311(a)(18)]."[7]
And while "CDL holders" are not specifically defined in the federal regulations, "commercial driver's license (CDL)" is defined as:
 "A license issued by a State or other jurisdiction, in accordance with the standards contained in 49 C.F.R. part 383, to an individual which authorizes the individual to operate a class of a commercial motor vehicle."[8]
Additionally, a Joint Explanatory Statement issued by Congress in conjunction with the MCSIA made Congressional intent clear regarding this issue:
 "The behavior of a CDL holder in operating vehicles other than CMV's is relevant to the CDL holder's fitness to operate a commercial motor vehicle;
. . . .
 "Subsection (c) revises 31311(a)(9) of such title to require a State to notify a CDL holder's home State of any violation of traffic laws committed by the CDL holder, not just violations involving a commercial motor vehicle."[9]
These federal regulations and the applicable discussions strongly imply that the definition of "driver" in Kansas' statutory mirroring of federal requirements should include "a person who holds a commercial driver's license" if the State is concerned about the loss of millions of dollars to the State Highway Fund.
Diversions
The second question posed in light of L. 2003, ch. 42, § 2 is whether diversions for driving under the influence of alcohol offenses are precluded by the statute, given that these diversions do appear on an individual's driving history.
The fact that a diversion appears on a person's driving history is not the determinative factor. Section 2 prohibits a driver from entering into a diversion agreement "in lieu of further criminal proceedings that would prevent such driver's conviction for any violation, of a state or local traffic control law . . . from appearing on the driver's record. . . ." A grant of diversion for driving under the influence would prevent the driver's conviction for driving under the influence from appearing on his driving record.
We are aware that K.S.A. 8-1013 and K.S.A. 2002 Supp. 8-1567(l)(1), as amended by L. 2003, ch. 100, § 1,[10] provide that for the purpose of determining whether an occurrence is a first, second or subsequent offense, an alcohol or drug-related conviction includes entering into a diversion agreement. Based on these statutes alone, a diversion for driving under the influence would not be precluded as such would count as a conviction. In relation to commercial drivers, however, K.S.A. 8-1013
and K.S.A. 2002 Supp. 8-1567(l)(1), as amended by L. 2003, ch. 100, § 1, conflict with L. 2003, ch. 42, § 2, which precludes a commercial driver from entering into a diversion agreement. We thus turn to the well settled rule of statutory construction that where an irreconcilable conflict exists between statutes, the latest enactment will be held to supersede, repeal or supplant the earlier by implication to the extent of the conflict; the later enactment must prevail.[11]
K.S.A. 8-1013 was last amended in 1993, and § (l)(1) of K.S.A. 2002 Supp. 8-1567, as amended by L. 2003, ch. 100, § 1, has remained virtually unchanged since 1988 when minor technical amendments were made. L. 2003, ch. 42, § 2 was enacted in 2003 and therefore must prevail over the other two statutes in relation to commercial drivers. Thus, diversion for driving under the influence of alcohol offenses is precluded for commercial drivers.
Plea Negotiations
The third question posed in light of L. 2003, ch. 42, § 2 is whether the statute precludes plea negotiations or charging amendments for traffic infractions and offenses. In that event, convictions for lesser or fewer offenses than those originally charged would appear on a commercial driver's driving record. Again, § 2 prohibits a driver from "enter[ing] into a diversion agreement in lieu of further criminal proceedings that would prevent such driver's conviction for any violation. . . ." Except for the issue of driver-vs.-holder of a commercial driver's license, this statute mirrors 49 C.F.R. § 384.226:
 "The State must not mask, defer imposition of judgment, or allow an individual to enter into a diversion program that would prevent a CDL driver's conviction for any violation, in any type of motor vehicle, of a State or local traffic control law (except a parking violation) from appearing on the driver's record, whether the driver was convicted for an offense committed in the State where the driver is licensed or another State."
The Federal Motor Carrier Safety Administration also discussed49 C.F.R. § 384.226:
 "A Joint Explanatory Statement issued by Congress in conjunction with the MCSIA makes clear that this new provision is intended to prohibit States not only from masking convictions, but also from using diversion programs or any other disposition that would defer the listing of a guilty verdict on a CDL driver's record. . . . The FMSCA [Federal Motor Carrier Safety Association] urges State Executive Branch agencies to work with the State Judicial Branch to eliminate the practice of masking. This practice allows unsafe drivers to continue to pose a risk to other motorists by allowing their continued operation on the nation's highways."[12]
In our opinion, since Section 2 of L. 2003, chapter 42 is written only in terms of a prohibition against a driver entering a diversion agreement, plea negotiations or amendments that result in convictions for lesser or fewer traffic infractions or offenses than originally charged are not precluded. While such plea negotiations could be considered a form of "masking," 49 C.F.R. § 384.226 does not clearly require States to prohibit plea negotiations and Kansas' L. 2003, ch. 42, § 2 clearly does not prohibit plea negotiations.
In conclusion, the term "driver," as used in the Kansas Uniform Commercial Drivers' License Act, means any person who drives, operates or is in physical control of a commercial motor vehicle, in any place open to the general public for purposes of vehicular traffic, or who is required to hold a commercial driver's license; the term does not include a person who merely holds a commercial driver's license but does not otherwise fall within that definition. Diversion for driving under the influence of alcohol offenses is precluded for commercial "drivers," even though a diversion would appear on the driver's record. Plea negotiations or charging amendments that result in convictions for lesser or fewer traffic infractions or offenses than originally charged are not precluded.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Camille Nohe Assistant Attorney General
PK:JLM:CN:jm
[1] Formerly, 2003 HB 2220 § 2.
[2] Now L. 2003, Ch. 42, §§ 1 through 9.
[3] Testimony of Sheila Walker before the House Transportation Committee, February 19, 2003 and before the Senate Transportation Committee, March 18, 2003.
[4] K.S.A. 8-2,128(k), as amended by L. 2003, Ch. 42, § 3(k) (emphasis added).
[5] State v. Vega-Fuentes, 264 Kan. 10, 14 (1998).
[6] In Re Marriage of Comley, 272 Kan. 202, 207 ( 2001), citingHulme v. Woleslagel, 208 Kan. 385, 391 (1972).
[7] 67 Federal Register 49,749 (2002).
[8] 49 C.F.R. § 383.5.
[9] 145 Cong.Rec. H12872 (1999).
[10] Under the 2003 amendments to K.S.A. 8-1567, § (l)(1) has become § (m)(1).
[11] Amundson Associates Art Studio, Ltd. v. National Council onCompensation, 26 Kan. App. 2d 489, 495 (1999), citing Richards v.Etzen, 231 Kan. 704, Syl. ¶ 1, (1982).
[12] 67 Federal Register 49,749-80 (2002).